UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **MARTIN ENERGY SERVICES, LLC** | **CIVIL ACTION** |
| **VERSUS** | **NO. 14-2986**<br>**c/w 15-79 c/w 15-81** |
| **M/V BOURBON PETREL, her engines, tackle, bunkers, Etc., *in rem*, and BOURBON PETREL SNC AND BOURBON OFFSHORE GREENMAR, S.A., *in personam*** | **SECTION "L" (4)** |

## ORDER & REASONS

The Court has before it Martin Energy Services, LLC's ("Martin Energy") Motion for Judgment on the Pleadings. R. Doc. 75. Having read the parties' briefs and reviewed the applicable law, the Court now issues this Order & Reasons.

### I. BACKGROUND

This consolidated case began as three actions filed by Plaintiff Martin Energy Services, LLC which were subsequently consolidated in this court on March 3, 2015. O.W. Bunker USA Inc. ("O.W. Bunker") purchased bunkers from Martin Energy and resold those bunkers to CGG Services S.A. and/or CGG Services US ("CGG"). R. Doc. 26-1 at 3. Specifically, O.W. Bunker contracted with Martin Energy to transport bunkers for delivery to three vessels under a long term Time Charter to CGG: the M/V BOURBON PETREL, the M/V MISS LILLY, and the M/V OMS RESOLUTION. Martin Energy delivered the bunkers to the vessels and issued invoices to O.W. Bunker seeking payment in the amount of $355,212.00, R. Doc. 26-2 at 2, for bunkers delivered to the M/V BOURBON PETREL, in the amount of $314,013.00 for bunkers delivered

to the M/V MISS LILLY, R. Doc. 26-3 at 2, and in the amount of $557,069.29[1] for bunkers delivered to the M/V OMS RESOLUTION.  R. Doc. 26-4 at 2.  In total, Martin Energy invoiced O.W. Bunker for $1,226,294.29 for bunkers delivered to the three vessels chartered by CGG.  In turn, O.W. Bunker issued invoices to CGG in the amount of $348,864.38 for bunkers delivered to the M/V BOURBON PETREL, R. Doc. 26-5 at 2, in the amount of $318,015.67 for bunkers delivered to the M/V MISS LILLY, R. Doc. 26-6 at 2, and $566,244.03 for bunkers delivered to the M/V OMS RESOLUTION R. Doc. 26-7 at 2.  O.W. Bunker's invoices to CGG total $1,233,124.08.  As noted by Martin Energy in its Opposition to O.W. Bunker's Motion to Enforce the Automatic Stay, the difference between what O.W. Bunker billed CGG and what Martin Energy billed O.W. Bunker totals $16,839.80.  R. Doc. 32 at 1.

On November 13, 2014, O.W. Bunker filed a voluntary petition for bankruptcy relief under Chapter 11 of the Bankruptcy Code in the Connecticut Bankruptcy Court.  R. Doc. 26-8; *Voluntary Petition for Bankruptcy of O.W. Bunker USA Inc.* (R. Doc.1), Case No. 14-51722 (Bankr. D. Conn.).  In that voluntary petition, O.W. Bunker identified Martin Energy on its "Consolidated List of Creditors Holding Twenty-One (21) Largest Unsecured Claims filed on the Petition Date in each of Debtors' Bankruptcy Cases."  O.W. Bunker recorded that Martin Energy had a disputed trade debtclaim amount for $1,178,101.44.  R. Doc. 26-8 at 10, *Voluntary Petition for Bankruptcy of O.W. Bunker USA Inc.* (R. Doc.1 at 9), Case No. 14-51722 (Bankr. D. Conn.).

On December 3, 2014, Martin Energy entered its appearance in the Chapter 11 Cases.  R. Doc. 26-9 at 2; *Voluntary Petition for Bankruptcy of O.W. Bunker USA Inc.* (Rec. Doc.122), Case No. 14-51722 (Bankr. D. Conn.).  According to O.W. Bunker, and Martin Energy does not

---

[1] O.W. Bunker's memorandum lists Martin Energy's invoice for the bunkers delivered to the M/V OMS RESOLUTION as totaling $559,137.79, but the attached invoice states the total as $557,069.29.  *See* Rec. Doc. 26-4 at 2.

2

dispute this point, counsel for Martin Energy attended the Section 341 meeting of creditors on December 15, 2014 and questioned the Debtors with respect to Martin Energy's potential claims against O.W. Bunker.  R. Doc. 26-1 at 5.  Furthermore, O.W. Bunker states that it filed its schedule of assets and liabilities on December 19, 2014 and identified Martin Energy as having an unsecured claim against O.W. Bunker's estate in the amount of $1,533,313.29.  R. Doc. 26-1 at 5.  O.W. Bunker further relays that Martin Energy filed a proof of claim against O.W. Bunker in the Connecticut Bankruptcy Proceeding on March 13, 2015.

On December 30, 2014, Martin Energy brought the first of the three separate actions and sought arrest of the M/V BOURBON PETREL pursuant to Federal Supplemental Admiralty and Maritime Rule C.  On January 13, 2015, Martin Energy filed two more actions and sought arrest of the other two vessels, the M/V MISS LILLY and the M/V OMS RESOLUTION.  In additions to the *in rem* proceedings, Martin Energy also brought *in personam* claims against the owners of the vessels, Bourbon Petrel SNC and Bourbon Offshore Greenmar S.A.

All three actions allege that Martin Energy has not been compensated for labor, materials, and/or services it provided above the vessels.  In response, CGG appeared by filing a Verified Statement of Right or Interest in all three cases and alleged a right of possession of each vessel based on long term Time Charters.  Defendants, along with CGG, allege that third parties O.W. Bunker USA Inc. and O.W. Bunker North America, Inc. are responsible for the payment of these invoices by virtue of their contracts with Martin Energy.  R. Doc.12.  On March 5, 2015, O.W. Bunker filed Notice of Restricted Appearance, Rec. Doc. 18, and a Notice of Filing of Bankruptcy.  Rec. Doc. 19.

On May 29, 2015, O.W. Bunker and ING Bank N.V. filed separate intervenor complaints, alleging that they held liens against the vessels at issue to the extent of Martin's

delivered fuel plus handling upcharges.  R. Docs. 49, 50.  O.W. Bunker claims that its status as an intermediary in the fuel transfer grants O.W. Bunker possession of the maritime liens at issue.  R. Doc. 50.  ING Bank N.V. brings a similar claim, arguing that O.W. Bunker assigned its lien rights to ING Bank.  R. Doc. 49.  In the Court's May 20, 2015 Order & Reasons, the Court declined to rule on the viability of these lien rights, finding that issues of fact precluded judgment on whether Martin Energy or intervenors O.W. Bunker and ING Bank properly stated a claim to a lien.  R. Doc. 42 at 13.

## II. PRESENT MOTIONS

### A. Martin Energy's Motion for Judgment on the Pleadings (R. Doc. 75)

Martin Energy filed a Motion for Judgment on the Pleadings.  R. Doc. 75.  Martin Energy notes that O.W. Bunker and ING Bank propose competing claims to the same putative maritime lien.  R. Doc. 75-1 at 2.  Without commenting on the substance of their claims, Martin Energy concludes its motion by arguing that Rule 12(c) commands summary dismissal when two intervenors assert "contradictory allegations," i.e., competing claims.  R. Doc. 75-1 at 3.

### B. ING Bank N.V. and O.W. Bunker's Oppositions

ING Bank and O.W. Bunker oppose Martin Energy's motion.  R. Docs. 77, 79.  ING Bank and O.W. Bunker assert the same arguments, so the Court collectively summarizes their motions for the sake of brevity.  The motion's opponents first contend that Martin Energy's motion is premature, because the question of ownership rights between O.W. Bunker and ING Bank is subsidiary to the question of whether said maritime lien exists.  R. Doc. 77 at 4.  Both opponents of the motion therefore argue that this motion is not ripe, and that the Court should defer ruling on the matter until the Court has determined whether the putative lien held by O.W. Bunker or ING Bank is itself viable.

The motion's opponents also assert that Martin Energy presents no grounds for judgment on the pleadings. R. Doc. 77 at 4. Both ING Bank and O.W. Bunker argue that the question of whether O.W. Bunker assigned its lien rights to ING Bank can only be resolved by interpreting the relevant finance documents, and that these documents are outside the scope of a Rule 12(c) motion. R. Doc. 77 at 5; R. Doc. 79 at 7-8. Both opponents also note that Martin Energy cites no precedent or language in the Rules of Federal Civil Procedure which suggest that "if parties file pleadings with competing claims that otherwise satisfy the pleading standard, all but one of those pleadings are subject to summary dismissal." R. Doc. 77 at 5.

### III.    Law and Analysis

#### A.  The Standard

Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are closed . . . a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The purpose of a Rule 12(c) motion is to "dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Collins v. A.B.C. Marine Towing, L.L.C.*, U.S. Dist. LEXIS 86515, at *6 (E.D. La. June 30, 2015) (internal citations omitted). When a court is presented with matters outside the pleadings in a 12(c) motion, the Court may exclude the matters or treat the motion as a motion for summary judgment under Rule 56. Fed. R. Civ. P. 12(d).

The standard for a motion for judgment on the pleadings is the same as the standard for a Rule 12(b)(6) motion to dismiss. *Ackerson v. Bean Dredging LLC*, 589 F.3d 196, 209 (5th Cir. 2009). The twin homilies of *Twombly* and *Iqbal* therefore govern this standard. A complaint must plead "enough facts to state a claim to relief that is plausible on its face" to survive a 12(b)(6) motion to dismiss. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[F]acial

plausibility [exists] when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court must take the well-pleaded factual allegations of the complaint as true and view them in the light most favorable to the plaintiff. *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008) (citing *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007)).

### B. Ripeness

The Court finds that Martin Energy's Motion for Judgment on the Pleadings is premature, at best. When evaluating ripeness, a court should examine whether the tendered issue involves "uncertain and contingent future events that may not occur as anticipated, or indeed may not occur at all." *Federal Election Com. v. Lance*, 635 F.2d 1132, 1138 (5th Cir. 1981) (internal citations omitted). The Court finds that it would be ill-advised to determine whether O.W. Bunker or ING Bank owns the putative lien rights before the Court determines whether said rights exist. Thus, the matter is not ripe for adjudication.

### C. Sufficiency of the Pleadings

The Court additionally finds that both O.W. Bunker and ING Bank satisfy the standard to survive a Rule 12(c) motion for judgment on the pleadings. Both intervenors state a claim for relief that is "plausible on its face." *Twombly*, 550 U.S. at 570. The Court agrees with Martin Energy that only one of the two intervenor plaintiffs, O.W. Bunker or ING Bank, owns the putative lien rights which premise their respective claims. But it is uncertain from the face of the pleadings who owns the lien rights.

Martin Energy fails to assert any grounds on which the intervenor's claims are insufficient to satisfy the applicable standard. Instead, Martin Energy contends that O.W.

Bunker and ING Bank's lien interests cannot coexist, and points the Court in the general direction of Rule 12(c).  The Court finds this briefing unhelpful.  The Court may not look outside of the pleadings or documents attached thereto when considering a Rule 12(c) motion, *see Gamel v. Grant Prideco, L.P.*, 2015 WL 5306554, at *2 (5th Cir. 2015), and the "Finance Documents" which allegedly assigned O.W. Bunker's rights to ING Bank, R. Doc. 49 at 4, are not attached to the pleadings at issue.  Thus, the Court finds no basis to allocate the putative maritime lien rights pursuant to Rule 12(c).

Assuming that this novel usage of Rule12(c) has procedural merit, the Court finds no basis in Martin Energy's four-page briefing to conclude that either O.W. Bunker or ING Bank's claims are implausible.  Both intervenors assert that they are entitled to the maritime lien at issue.  Both allege all required elements of their claim.  The fact that two or more claimants assert ownership over the same rights does not negate the facial plausibility of their individual pleadings.

### IV. CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Martin Energy's Motion for Judgment on the Pleadings, R. Doc. 75, is **DENIED**.

New Orleans, Louisiana this 16th day of December, 2015.

                                              UNITED STATES DISTRICT JUDGE