UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **MARTIN ENERGY SERVICES, LLC** | **CIVIL ACTION** |
| **VERSUS** | **NO: 14-2986** |
| **M/V BOURBON PETREL, ET AL** | **SECTION: "L" (4)** |

**ORDER AND REASONS**

Before the Court is a **Motion for Leave to File Amended Complaint (R. Doc. 124)** filed by the Plaintiff, Martin Energy Services, LLC. The motion is opposed. R. Doc. 127. The motion was heard by oral argument on August 29, 2018.

**I.     Background**

This breach of contract, quantum meruit, and unjust enrichment case was originally filed in the District Court on December 30, 2014, pursuant to the Court's admiralty and maritime jurisdiction under 28 U.S.C § 1333 and Rule 9(h) of the Federal Rules of Civil Procedure. R. Doc. 1. The Defendants in this matter are CGG Services U.S. Inc., three vessel-owners *in personam*, and the vessel owner's three vessels *in rem*.[1] It was uncontested at the hearing that CGG S.A. (CGG U.S.'s French affiliate) has made a special appearance in this matter pursuant to their time charter with two of the vessels, which requires CGG S.A. to defend and indemnify the vessels and their owners against Martin's claims. R. Doc. 9.

Defendants claims that CGG U.S. reached their credit limit for purchasing fuel from Plaintiff. R. Doc. 130, p. 17. Due to these credit concerns, Defendants claim that Martin began to sell fuel to CGG U.S. through an intermediary company called O.W. Bunker USA, Inc. (OWB).

---

[1] M/V Bourbon Petrel (owned by SNC Bourbon CE Petrel and Bourbon Offshore Greenmar S.A.), M/V/ OMS Resolution (owned by Rederij Groen BV), and the M/V/ Miss Lilly (owned by Sea Support Ventures, LLC).

1

*Id.* The complicated multi-party arrangement is represented by Defendants as involving the following steps: CGG U.S. issued purchase orders for their fuel needs to OWB, purchase orders were issued to OWB, OWB issued purchase order confirmations to Martin for the fuel purchases, Martin issued invoices to OWB for the sale of the fuel, OWB issued invoices to CGG U.S. for the sale of the fuel, which included a commission for OWB. *Id.*, p. 2-3. Martin acknowledges that OWB was a "contract intermediary" between CGG and Martin. R. Doc. 133, p. 2.

It is uncontested that once Martin's fuel was sold it was placed into the fuel transport vessels M/V Bourbon Petrel, M/V/ OMS Resolution, and the M/V/ Miss Lilly. Ownership of the vessels is uncontested: The M/V Bourbon Petrel was owned by SNC Bourbon CE Petrel and Bourbon Offshore Greenmar S.A., and was under time charter with CGG S.A., not CGG U.S. *Id.*, p. 3. The M/V OMS Resolution was owned by Rederij Groen BV and was also under time charter to CGG S.A., not CGG U.S. The M/V Miss Lilly was owned by Sea Support Ventures, LLC and was under time charter to CGG U.S. It is also uncontested at oral argument that OWB didn't pay for the fuel it received and filed for bankruptcy, and is no longer a party to this matter. R. Doc. 130, p. 2; R. Doc. 133, p. 1.

On January 16, 2015, CGG S.A. filed a Statement of Interest with the District Court, originally noting their special appearance was based on their time charter with the B/V Bourbon Petrel and their responsibility to defend and indemnify the *in rem* claims against the vessel. R. Doc. 9. Since then, it appears from both counsel's representations at oral argument that the time charter CGG S.A. had with the M/V OMS Resolution also requires CGG S.A. to defend and indemnify the *in rem* claims against that vessel as well. Finally, it appears from the hearing that the time charters require CGG S.A. to defend and indemnify the owners of the vessels, Bourbon

Petrel SNC, Bourbon Offshore Greenmar S.A., and Roderij Groen BV, from Martin's *in personam* claims against them.

Via crossclaim on April 21, 2016, Martin claimed unjust enrichment and quantum meruit against CGG U.S. R. Doc. 109. In this crossclaim Martin did not assert any claims against CGG S.A. *Id.*

The instant Motion (R. Doc. 124) filed by Plaintiff seeks leave to file an amended complaint, which accomplishes several changes in this matter. First, Plaintiff seeks to add CGG S.A. as a Defendant on the basis of breach of contract, unjust enrichment. Second, Plaintiff seeks to add new claims of unjust enrichment against the vessel owners.

Martin argues that the proposed amended complaint will not delay the litigation, and will not prejudice any party. Martin argues that CGG S.A. made a special appearance, has taken part in proceedings, that CGG S.A. and CGG U.S. have retained the same counsel, and that both have responded to discovery requests. R. Doc. 124, p. 3. However, Martin does not explain why the limited appearance should result in exposing CGG S.A. to direct claims.

## II.   Standard of Review

Federal Rule of Civil Procedure 15(a) governs the amendment of pleadings before trial. Rule 15(a) allows a party to amend its pleadings "only with the other party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Moreover, the Rule urges that the Court "should freely give leave when justice so requires." *Id.* In taking this liberal approach, the Rule "reject[s] the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Conley v. Gibson*, 355 U.S. 41, 48 (1957).

"Rule 15(a) requires a trial court 'to grant leave to amend freely,' and the language of this rule 'evinces a bias in favor of granting leave to amend.'" *Jones v. Robinson Prop. Grp.*, 427 F.3d 987, 994 (5th Cir. 2005) (internal quotations marks omitted) (quoting *Lyn–Lea Travel Corp. v. Am. Airlines*, 283 F.3d 282, 286 (5th Cir. 2002)). When denying a motion to amend, the court must have a "substantial reason," considering such factors as "'undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . and futility of the amendment.'" *Marucci Sports, LLC v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014) (quoting *Jones*, 427 F.3d at 994). An amendment is deemed to be futile if it would be dismissed under a Rule 12(b)(6) motion. *Id.* (citing *Briggs v. Miss.*, 331 F.3d 499, 508 (5th Cir 2003)).

"[T]he Fifth Circuit [has] clarified that when, as here, a scheduling order has been issued by the district court, Rule 16(b) governs amendment of pleadings." *Royal Ins. Co. of America v. Schubert Marine Sales*, 02–0916, 2003 WL 21664701, at *2 (E.D. La. July 11, 2003) (Englehardt, J.) (citing *S & W Enterprises, L.L.C. v. Southtrust Bank of Ala.*, 315 F.3d 533, 535–36 (5th Cir. 2003)). Rule 16(b) limits changes in the deadlines set by a scheduling order "only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). To determine if good cause exists as to untimely motions to amend pleadings, the Court should consider: "(1) the movant's explanation for its failure to timely move for leave to amend; (2) the importance of the amendment; (3) the potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure that prejudice." Schubert Marine Sales, 2003 WL 21664701, at *2 (citing *S & W Enterprises*, 315 F.3d at 536). If the movant can show good cause, the Court will then apply the liberal standards of Rule 15(a). *S&W Enterprises*, 315 F.3d at 536.

### III.   Analysis

#### A.   Scheduling Order

Defendants argue that the Motion before the Court was filed improperly according to the Scheduling Order issued by the District Court. R. Doc. 121. They claim that the Scheduling Order states that the deadline for dispositive motions is August 27, 2018. Defendants argue that because the submission date for the instant Motion is August 28, Martin has disobeyed the Scheduling Order and must show good cause under Rule 16.

As preliminary matter, the Court notes that the Scheduling Order contemplates the addition of parties and that Defendants have misread the Scheduling Order. The Scheduling Order states that "[a]ll pretrial motions . . . shall be **filed** no later than August 28, 2018, and served in sufficient time to permit **submission** on September 12, 2018." (emphasis added) *Id.* The Scheduling Order shows that August 27 is the deadline for filings, and that September 12 is the deadline for the submission date. The Motion before the Court was filed August 8, 2018, and is set for submission for August 29. Defendants' argument that the instant Motion was filed improperly pursuant to the Scheduling Order is contrary to the plain writing in the Order. Therefore, Martin has complied with the Scheduling Order. The Court now discusses Fed. R. Civ. P. 15(a)(2).

#### B.   Undue Delay, Bad Faith, Dilatory Motive

The first factor the court considers when determining whether or not to grant leave to amend pursuant to Rule 15(a) is whether the amendment will cause any undue delay, is in bad faith, or that the movant has some dilatory motive in filing the motion.

Martin argues that the proposed amended complaint would not require any additional discovery, that CGG S.A. has had adequate time to prepare for trial because they retain the same counsel as CGG U.S, that CGG S.A. first made their special appearance in this action three years

5

ago, and that the parties had notice of Martin's intent to proceed against CGG S.A. by e-mail correspondence on November 23, 2016.

The Court notes that all of these arguments *suggest* undue delay and dilatory motive rather than weigh against it. Martin had opportunities to seek to amend as early as January 16, 2015, the date CGG S.A. filed their statement of interest in this matter. R. Doc. 9. Similarly, the prolonged delay renders unbelievable Martin's claim that this Motion was not filed with dilatory intent. Therefore, the first prong weighs against granting leave to amend.

### C. Repeated Amendments, Deficiencies

The second factor the court considers when determining whether or not to grant leave to amend pursuant to Rule 15(a) is whether the party has previously filed repeated amendments to cure deficiencies before filing the instant motion. Courts in the Fifth Circuit have found that where a party has been given multiple opportunities to cure a defect, denial of a Rule 15(a) motion is proper. *See, e.g., Price v. Pinnacle Brands, Inc.,* 138 F.3d 602, 607–08 (5th Cir. 1998) (upholding district court's denial of 15(a) motion where plaintiffs had three prior opportunities to amend their complaint).

The Court notes that this is the first time Plaintiffs seek to file an amended complaint. Therefore, this prong weighs in favor of granting leave to amend.

### D. Undue Prejudice

The third factor the court considers when determining whether or not to grant leave to amend pursuant to Rule 15(a) is whether the amendment will cause any undue prejudice to the opposing party. The Fifth Circuit has cautioned that amendments should not be permitted where they would "fundamentally alter the nature of the case." *In re American International Refinery, Inc.,* 676 F.3d 455, 467 (5th Cir. 2012) (noting that new allegations of fraud in bankruptcy

proceeding would have "fundamentally altered" the nature of a case which had previously been limited to determination of whether one party possessed a conflict of interest warranting disgorgement of monies paid), *Mayeaux v. Louisiana Health Service and Indem. Co.,* 376 F.3d, 420, 427–28 (5th Cir. 2004) (finding that complaint would be "fundamentally altered" where proposed amendment would destroy jurisdiction and "effectively reconstruct[ed] the case anew."). Further, the Fifth Circuit has noted that a defendant is prejudiced if an added claim would require that the defendant, "reopen discovery and prepare a defense for a claim different from the [one]…that was before the court." *Smith v. EMC Corp.*, 393 F.3d 590, 596 (5th Cir. 2004) (quoting *Duggins v. Steak'N Shake, Inc.*, 195 F.3d 828, 834 (6th Cir. 1999)).

Martin's proposed amended complaint seeks to add as a direct defendant and bring multiple *in personam* claims against a party that for three years has only made a special appearance as an indemnitor. That Martin's proposed amended complaint is "effectively reconstructing the case anew" is apparent to the Court. *Mayeaux*, 376 F.3d at 427. This complex matter has been litigated for well over three years, has been subject to multiple continuances, and has involved extensive document production. To force CGG S.A. to potentially "reopen discovery and prepare a defense different from the [one]…that was before the court" is clearly prejudicial. *Smith*, 393 F.3d at 596 (quoting *Duggins*, 195 F.3d at 834).

### E. Futility

The Fifth Circuit has further held that an amendment is futile "when the justification for the denial is 'readily apparent'" and the "record reflects ample and obvious grounds for denying leave to amend." *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014).

### i.     **Breach of Contract against CGG S.A.**

Plaintiff's proposed amended complaint alleges breach of contract against CGG S.A. At oral argument, the Court asked Plaintiff's counsel about the contract that forms the basis for the breach of contract claim against CGG S.A., and what Plaintiff's relationship was to this contract. Martin's counsel could not identify a single contract between CGG S.A. and Plaintiff. Upon careful review, the Court also notes that the proposed amended complaint similarly did not identify any contract between Martin and CGG S.A. With no contract produced by Plaintiff that could serve as the basis of the breach of contract claim, it is "readily apparent" to the Court that the proposed amendment is futile.[2] *Marucci Sports*, 751 F.3d at 378.

### ii.    **Quasi Contract Claims Against CGG S.A.**

Plaintiff's proposed amended complaint brings two quasi-contract claims[3] against CGG S.A.; unjust enrichment and quantum meruit. Louisiana law controls[4] this dispute.

---

[2] At oral argument, Martin's counsel seemed to suggest that the Commercial Instrument and Liens Act provided a basis for the breach of contract claim against CGG S.A. As the Fifth Circuit has recently noted in a case involving similar facts to this matter, "[i]n relevant part,) CIMLA states that a person providing necessaries to a vessel "on the order of the owner or a person authorized by the owner" is entitled to a maritime lien on the vessel." *Valero Marketing & Supply Company v. M/V Almi Sun, IMO No. 9579535*, 893 F.3d 290, 292-93 (5th Cir. 2018). CIMLA is a statute, not a contract, and it allows not for liens against vessels, not breach of contract actions. The Fifth Circuit in *Valero* also made an observation about these fuel supply arrangements relevant to the futility of Martin's breach of contract claim: "It is not unusual for an entity supplying necessaries to a vessel to lack privity of contract with the owner of that vessel, and to instead contract with an intermediary." *Id.*

[3] The Fifth Circuit has wrote that "[a] quasi-contract, thus, arises when there is a duty . . . imposed by law in the absence of a promise." *U.S. v. P/B STCO 213, ON 527 979*, 756, F.2d 364 (5th Cir. 1985) (citation omitted). Applying Louisiana law, the Fifth Circuit has also noted that unjust enrichment and quantum meruit are both categorized as quasi-contracts. *SMP Sales Management, Inc. v. Fleet Credit Corp.*, 960 F.2d 557, (5th Cir. 1992). *See also U.S. v. City of Palm Beach Gardens*, 635 F.2d 337 (5th Cir. 1981).

[4] The Fifth Circuit has held that maritime jurisdiction applies to claims and not entire cases. *See Luera v. M/V Alberta*, 635 F.3d 181, 190 (5th Cir 2011); *see also Operaciones Tecnicas Marinas S.A.S. v. Diversified Marine Serves, LLC*, 2016 WL 7229288 at 2-3 (E.D. La. Dec. 14, 2016). Here, whether the Court has jurisdiction over the quasi-contract claims via diversity jurisdiction or via maritime jurisdiction, Louisiana law will still likely apply. Courts in Louisiana sitting in diversity will apply Louisiana's law on unjust enrichment. *See Zeising v. Shelton*, 648 Fed,Appx. 434 (5th Cir. 2016); *Ferrara Fire Apparatus, Inc. JLG Industries, Inc.*, 581 Fed.Appx. 440 (5th Cir. 2014). The Court has not found an admiralty rule with respect to quasi-contracts, and it appears the Fifth Circuit has never spoke to its absence. However, the Eleventh Circuit has recognized that there is no admiralty rule for quasi-contracts, holding that the law of the locality must fill the gap. *BVI Marine Constr. Ltd. V. ECS-Florida, LLC,* No. 12-80225-CIV-MARRA,

Unjust enrichment is codified in Louisiana Civil Code article 2298, which provides: "[a] person who has been enriched without cause at the expense of another person is bound to compensate that person." La. C.C. art. 2298. To succeed on this claim, Martin Energy must allege and prove the following five elements: (1) an enrichment, (2) an impoverishment, (3) a connection between the enrichment and resulting impoverishment, (4) an absence of "justification" or "cause" for the enrichment and impoverishment, and (5) no other remedy at law available to plaintiff. *JCD Marketing Co. v. Bass Hotels and Resorts, Inc.,* 812 So.2d 834, 842 (La.App. 4 Cir. 3/6/02) (citing *Baker v. Maclay Properties Co.,* 648 So.2d 888, 897 (La.1/17/95)). Louisiana law appears to treat claims for quantum meruit and unjust enrichment the same.[5]

Here, the proposed amended complaint facially fails to articulate an unjust enrichment claim against CGG S.A. Paragraph 29 of the proposed amended states:

> Plaintiff provided services, goods, materials and equipment to and for the benefit of CGG Services S.A., in particular those provided to the Vessels listened in Paragraphs 4, 6, and 8. Pursuant to the time charters for these Vessels, CGG Services, S.A. was obligated to procure and pay for the Vessels' fuel.

R. Doc. 124-3, p. 6. The essential elements of Martin's unjust enrichment claim are absent. Paragraph 29 states that the fuel was provided to the vessels, *not* CGG S.A. Martin then cites the time charters and claims that CGG S.A. was obligated to procure and pay for the Vessels' fuel. But the nature of the benefit to CGG S.A. under the time charters was not stated, the time charters themselves were not attached to the proposed amended complaint, and it was CGG *U.S.* that purchased fuel for the vessels, *not* CGG S.A. Further, it was from OWB that the fuel was

---

2013 WL 6768646, at *14 (S.D. Fla., Dec. 20, 2013) (citing *Sea Byte, Inc. v. Hudson Marine Mgmt. Servs. Inc.*, 565 F.3d 1293, 1301 (11th Cir. 2009)). Here, the locality is Louisiana as vessels at the center of this matter were located in Fourchon, Louisiana. As a result, Louisiana law will apply.

[5] *See Baseline Construction & Restoration of Louisiana, LLC v. Favrot,* 2010 WL 8972202, at *14 (La. App. 4th Cir. July 21, 2010) ("the correct term for this substantive ground for recovery [where no contract exists and the court applies a substantive basis for recovery] is unjust enrichment.").

purchased, *not* Martin. Facially, Martin has not plead "a connection between the enrichment and resulting impoverishment." *JCD Marketing Co.*, 812 So.2d at 842 (citing *Baker*, 648 So.2d at 897).

Martin has also failed to plead an absence of "justification" or "cause" for the enrichment and impoverishment." *Id.* The foundation of Martin's claims as stated in the proposed amended complaint is simply that goods and services were provided to "Defendants," and "to date Plaintiff has not been paid." R. Doc. 124-3, p. 4-5. The amended complaint does not allege any facts regarding what goods and services were provided specifically to CGG S.A. in particular, not just to the "Defendants." It also does not allege that CGG S.A. is responsible for Martin's non-payment, let alone that CGG S.A. is responsible for the non-payment without "justification." *JCD Marketing Co.*, 812 So.2d at 842 (citing *Baker*, 648 So.2d at 897).

Accordingly,

**IT IS ORDERED** that the Plaintiff's **Motion for Leave to File Amended Complaint (R. Doc. 124)** is **DENIED.**

New Orleans, Louisiana, this 11th day of September 2018.

_____
**KAREN WELLS ROBY
CHIEF UNITED STATES MAGISTRATE JUDGE**